*Formatted for Electronic Distribution*                                              *Not for Publication*

UNITED STATES BANKRUPTCY COURT
DISTRICT OF VERMONT

Filed & Entered
On Docket
08/11/2023

_____

**In re:**

**Jean M. Pagliughi,**                                                       Chapter 13
                                                                              Case # 22-10172
        **Debtor**

_____

**Matthew Brown
and Jacqueline Brown,**
        **Plaintiffs**,                                            Adversary Proceeding
                                                                              Case # 23-01004

        **v.**

**Jean M. Pagliughi,**
        **Defendant.**
_____

*Appearances:*

    *Rebecca A. Rice, Esq.*                                 *Antonin I.Z. Robbason, Esq.*
    *Cohen & Rice*                                             *Ryan, Smith & Carbine, Ltd.*
    *Rutland, Vermont*                                      *Rutland, Vermont*
    *For the Debtor/Defendant*                         *For Matthew and Jacqueline Brown*

    *Jan M. Sensenich, Esq.*
    *Norwich, Vermont*
    *Chapter 13 Trustee*

<u>**MEMORANDUM OF DECISION
DENYING MOTION FOR SUMMARY JUDGMENT**</u>

      Pending before the Court is the Motion for Summary Judgment filed by Plaintiffs-Creditors Matthew and Jacqueline Brown ("Plaintiffs") against Jean M. Pagliughi, Defendant-Debtor ("Debtor"). Plaintiffs seek summary judgment on their claim for a determination of exception to discharge brought under § 523(a)(4) of title 11 of the United States Code (the "Bankruptcy Code") based upon a state court decision. Plaintiffs rely upon the res judicata effect of the state court's decision.

      For the reasons set forth below, the Court finds and determines that Plaintiffs have failed to meet their burden of proof and their request for summary judgment is denied.

Page **1** of **9**

## JURISDICTION

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Order of Reference entered by the U.S. District Court on June 22, 2012. The Court declares this contested matter to be a core proceeding according to 28 U.S.C. § 157 (b)(2)(B), over which this Court has constitutional authority to enter a final judgment.

## BACKGROUND

### A. Pre-Petition Events

The litigation between these parties began prior to Debtor filing for bankruptcy relief and the commencement of this Adversary Proceeding. The pertinent facts are not in dispute. On April 7, 2014, Ann Pagliughi created the "Ann Pagliughi Irrevocable Trust" (the "Trust") and named Debtor as Trustee.[1] The Trust was intended to assist with Medicaid planning.[2] The Trust is a Medicaid Income Only Trust.[3] In June 2015, upon the sale of Ann Pagliughi's home, the proceeds were placed in the Trust.[4]

When Ann Pagliughi passed away on or about April 16, 2016, the principal of the Trust was to be distributed in equal shares to Plaintiffs.[5] Debtor, in her fiduciary capacity as Trustee of the Trust, filed an accounting with the New York Surrogate's Court, Suffolk County, to which Plaintiffs objected (the "State Court Action").[6] In the State Court Action, Plaintiffs alleged various discrepancies in the accounting and the State Court held a bench trial on various issues, each of which included whether Debtor breached her fiduciary duties by various acts and/or omissions.[7]

The State Court conducted a bench trial and issued a decision on June 29, 2021 (the "State Court Decision").[8] The State Court Decision summarized testimony it considered at trial, primarily Debtor's.[9] Debtor testified that her accounting was not accurate, admitting that she did not fully account for all the assets in the Trust.[10] In preparing the accounting, Debtor relied upon her attorney and accountant.[11] From Debtor's testimony, the State Court found that Debtor had erroneously believed that the Trust would become valid and effective only if and when Ann Pagliughi applied for Medicaid.[12] The State Court found these mistaken beliefs insufficient to abrogate Debtor's fiduciary obligation to administer the Trust by its

---

[1] *See* Complaint, AP doc. #1 at ¶ 13 and Answer, AP doc. #4 at ¶ 13.
[2] *See* Motion for Summary Judgment, Exhibit 2 ("State Court Decision") at p. 5.
[3] *See* State Court Decision at p. 1.
[4] *See* State Court Decision at p. 5.
[5] *See* Complaint, AP doc. #1 at ¶ 23 and Answer, AP doc. #4 at ¶ 23.
[6] *See* State Court Decision at p. 1.
[7] *See* State Court Decision at pp. 2-4.
[8] *See* State Court Decision.
[9] *See* State Court Decision at pp. 5-6.
[10] *Id.*
[11] *Id.*
[12] *See* State Court Decision at p.9.

terms.[13] The Court found Debtor breached her fiduciary duties by (1) paying expenses in direct violation of the terms of the Trust;[14] (2) failing to fully and accurately account;[15] (3) not keeping proper records and accounts;[16] and (4) failing to include additions to the Trust's principal.[17] In its findings, the State Court placed great weight on the fact that Debtor is a licensed attorney and "should have had an even heightened understanding of her fiduciary duty."[18] There is no finding that Debtor intended to violate the terms of the Trust or that her actions exhibited knowledge, conscious misbehavior, or gross recklessness. Based upon its findings, the State Court denied Debtor's commissions and awarded Plaintiffs a surcharge in the amount of $153,391.72, plus interest, which forms the basis of Plaintiffs' proof of claim against Debtor.[19]

### B. Post-Petition Events

On December 22, 2022 (the "Petition Date"), Debtor commenced her Chapter 13 case.[20] On April 19, 2023, Plaintiffs filed a complaint against Debtor commencing this Adversary Proceeding, seeking a determination that their debts are excepted from discharge under § 523(a)(4). Section 523(a)(4) excepts from discharge debts "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." Plaintiffs' Complaint sets forth no allegations independent of the State Court Decision.

On June 2, 2023, Plaintiffs moved for summary judgment, arguing the doctrine of res judicata and specifically collateral estoppel entitles them to judgment as a matter of law based exclusively upon the State Court Decision.[21] In so moving, Plaintiffs attached the State Court Decision, providing no separate Statement of Undisputed Facts.[22] Rather, Plaintiffs solely rely upon the State Court Decision, providing the Court with no separate pleadings or context for the State Court Decision other than what the State Court sets forth.

On July 3, 2023, Debtor responded, agreeing that the State Court Decision and surcharge is binding, but disputing that the State Court Decision establishes the facts necessary for this Court to find defalcation as a matter of law.[23]

---

[13] *Id.*
[14] *See* State Court Decision at pp. 3-4 and 10.
[15] *See* State Court Decision at p. 3 and 10.
[16] *See* State Court Decision at p. 3 and 10.
[17] *See* State Court Decision at pp.2-3and 10.
[18] *See* State Court Decision at p. 9.
[19] *See* State Court Decision at p. 10 and Main Case Claim No. 4-1.
[20] *See* Main Case doc. #1.
[21] *See* AP doc. #5.
[22] *See* Fed. R. Civ. P. 56(c), made applicable hereto by Fed. R. Bankr. P. 7056; *see also,* Vt. LBR 7056-1 and 2. The local rules of this Court state that failure to file a separate, short, and concise statement of undisputed material facts may result in a denial of the motion. However, under the facts and circumstances of this case. mainly Plaintiffs' complete reliance on the State Court Decision and Debtor's admissions related to the State Court Decision in her Answer, the Court finds analysis of the legal arguments warranted. The Court notes that in their Reply, Plaintiffs include a Statement of Undisputed Facts, far outside the scope of the response and in contravention to Vt. LBR 7056-2(a).
[23] *See* AP doc. #6.

## DISCUSSION

### A. Summary Judgment Standard

Rule 56(c) provides that summary judgment should be granted to the moving party if the Court determines that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 n.4 (1986) (quoting Fed. R. Civ. P. 56(c)) (internal quotation marks omitted). A movant has the initial burden of establishing the absence of any genuine issue of material fact. *Celotex*, 477 U.S. at 322-23. A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The Second Circuit has repeatedly noted that, "[a]s a general rule, all ambiguities and inferences to be drawn from the underlying facts should be resolved in favor of the party opposing the motion, and all doubts as to the existence of a genuine issue for trial should be resolved against the moving party." *Brady v. Town of Colchester*, 863 F.2d 205, 210 (2d Cir. 1988) (citing *Celotex Corp.*, 477 U.S. at 330 n.2 (1986) (Brennan, J., dissenting)); *see also, Burrell v. City Univ. of New York*, 894 F. Supp. 750, 757 (S.D.N.Y. 1995). "If, when viewing the evidence produced in the light most favorable to the non-movant, there is no genuine issue of material fact, then the entry of summary judgment is appropriate." *Pereira v. Cogan*, 267 B.R. 500, 506 (S.D.N.Y. 2001); *see Burrell*, 894 F. Supp. at 758 (citing *Binder v. Long Island Lighting Co.*, 933 F.2d 187, 191 (2d Cir. 1991)).

To prevail on a claim pursuant to § 523(a)(4), the burden is on the Plaintiffs, as the party claiming nondischargeability, and that burden must be met by the preponderance of the evidence. *See Grogan v. Garner,* 498 U.S. 279, 291, 111 S.Ct. 654, 661, 112 L.Ed.2d 775 (1991). For Plaintiffs to be entitled to summary judgment on their claim for a determination of exception to discharge under § 523(a), they must establish that there is no genuine issue of material fact on each element under § 523(a)(4).

### B. Res Judicata and Collateral Estoppel

Plaintiffs rely on res judicata to establish that there is no genuine issue as to any material fact. They expressly premise their argument in support of summary judgment on the assertion that the State Court "determined" facts showing a defalcation occurred.[24] Plaintiffs rely on various findings about Debtor's alleged intent, misconduct, and motivations. Debtor argues that the State Court Decision does not establish the facts necessary for this Court to find defalcation as required for the debt to be nondischargeable under § 524(a)(4).

---

[24] *See* AP doc. #5 at p.5.

Res judicata and collateral estoppel are related but distinct doctrines that may bar a party from litigating certain claims or issues in a subsequent proceeding. *See Leather v. Eyck,* 180 F.3d 420, 424 (2d Cir. 1999). Under the doctrine of res judicata, or claim preclusion, "a final judgment on the merits of the action preclude the parties or their privies from relitigating issues that were or *could have been* raised in that action." *Rivet v. Regions Bank of La.,* 522 U.S. 470, 476, 118 S.Ct. 921, 925, 139 L.Ed.2d 912 (1998) (emphasis added). In contrast, collateral estoppel, or issue preclusion, means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated by the same parties in a future lawsuit." *Schiro v. Farley,* 510 U.S. 222, 232, 114 S.Ct. 783, 790, 127 L.Ed.2d 47 (1994).

In their motion, Plaintiffs summarily argue that res judicata principles entitle them to judgment as a matter of law because the requisite facts have been established by the State Court Decision.[25] However, Plaintiffs' arguments hinge on findings of fact and "determinations" based on facts before the State Court that preclude Debtor from presenting otherwise, which sound more in collateral estoppel, or issue preclusion.[26] Nowhere in their Complaint or in the summary judgment record do Plaintiffs contend that defalcation was raised or could have been raised in the State Court Action. Plaintiffs do allege that the factual findings in the State Court Decision are not subject to relitigation because those findings support defalcation under the doctrine of collateral estoppel.[27] Therefore, the Court considers whether collateral estoppel, or issue preclusion,[28] applies to the State Court Decision.

Collateral estoppel is an equitable doctrine premised on notions of due process, fairness, finality of judgments, and conservation of court and litigation resources, and—when properly invoked—prevents a party from relitigating an issue raised in a prior action and decided against that party. *Conte v. Justice*, 996 F.2d 1398, 1400 (2d Cir. 1993) (citing *Schwartz v. Public Adm'r of Bronx*, 24 N.Y.2d 65, 74, 298 N.Y.S.2d 955, 962, 246 N.E.2d 725, 730 (1969)); *Gilberg v. Barbieri*, 53 N.Y.2d 285, 291, 441 N.Y.S.2d 49, 50, 423 N.E.2d 807, 808 (1981); *Murphy v. Gallagher*, 761 F.2d 878, 882 (2d Cir. 1985); *see Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979)("Collateral estoppel ... [has] the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party ... and of promoting judicial economy by preventing needless litigation."). It is well-settled that preclusion principles apply in bankruptcy, and that collateral estoppel may be used to establish the nondischargeability of a debt. *In re Snyder*, 939 F.3d 92, 100 (2d Cir. 2019) (citing *Evans v. Ottimo*, 469 F.3d 278, 281 (2d Cir.

---

[25] *See* AP doc. #5 at p.3.
[26] *See* AP doc. #5 at p.5; AP doc. # 7 at pp.1-2.
[27] *See* AP doc. # 1 at ¶ 39.
[28] "Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been actually litigated and decided." *Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 77 n.1, 104 S.Ct. 892, 894 n.1, 79 L.Ed.2d 56 (1984).

2006), and *Grogan v. Garner*, 498 U.S. 279, 284 n.11, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)).

Just as federal courts may be called upon to give preclusive effect to each other's judgments, they also may be called upon to give preclusive effect to state court judgments. *In re Ferrandina*, 533 B.R. 11, 22 (Bankr. E.D.N.Y. 2015) (citing U.S. Const Art. IV, § 1 (Full Faith and Credit Clause), 28 U.S.C. § 1738, and cases omitted). As an equitable doctrine, collateral estoppel is not a matter of absolute right; rather, its invocation is influenced by considerations of fairness in the individual case. *Pennecom B.V. v. Merrill Lynch & Co.*, 372 F.3d 488, 493 (2d Cir. 2004). Collateral estoppel rules are not "rigid or mechanical" and cannot be "reduced to some black letter formula." *Conte v. Justice*, 996 F.2d at 1400 (internal citations omitted); *see Denton v. Hyman (In re Hyman)*, 502 F.3d 61, 65–66 (2d Cir. 2007) (opining that issue preclusion "is a flexible doctrine" whose application depends upon "general notions of fairness involving a practical inquiry into the realities of the litigation.") (quoting *Jeffreys v. Griffin*, 1 N.Y.3d 34, 41, 801 N.E.2d 404, 769 N.Y.S.2d 184 (2003)).

Collateral estoppel is available under both federal and New York law. Here, New York law applies, as the State Court Decision was issued by a state court deciding issues of state law.[29]

### C. Collateral Estoppel Analysis

Under New York law, collateral estoppel bars relitigation of an issue when (1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action. *See Evans v. Ottimo*, 469 F.3d 278, 281 (2d Cir. 2006). The party seeking the benefit of collateral estoppel has the burden of establishing that the issue actually litigated and determined in the prior action is identical to the issue on which preclusion is sought, whereas the party attempting to defeat its application has the burden of establishing the absence of a full and fair opportunity to litigate the issue. *Kaufman v. Eli Lilly & Co.,* 65 N.Y.2d 449, 455-56, 492 N.Y.S.2d 584, 482 N.E.2d 63 (1985). In determining whether the issue raised in this Adversary Proceeding is identical to the issues adjudicated by the State Court Decision, the Court must analyze the elements of Plaintiffs' nondischargeability claim under § 523(a)(4).

Section 523(a)(4) excepts from discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny." It is undisputed Debtor was acting in an express fiduciary capacity with respect to the Trust and the assets of the Trust when the amount due to the beneficiaries was incurred. The only issue before the Court is whether the State Court Decision establishes a defalcation

---

[29] Typically, federal common law is applied to determine the preclusive effect of a federal judgment, while state law is applied to determine the preclusive effect a federal court is to give a state court judgment. *See Marvel Characters, Inc. v. Simon,* 310 F.3d 280, 286 (2d Cir. 2002). Debtor's liability on the claims brough in New York State Court was determined under New York state law; therefore, this Court applies New York state law on issue preclusion. The Court will not engage in separate analysis under the federal standards.

occurred such that collateral estoppel applies.

Defalcation requires "a culpable state of mind" with a "knowledge of, or gross recklessness in respect to the improper nature of the relevant fiduciary behavior." *Bullock v. BankChampaign, N.A.,* 569 U.S. 267, 269, 133 S.Ct. 1754, 1757, 185 L.Ed. 2d 922 (2013). In *Bullock,* the Supreme Court ruled that defalcation "includes a culpable state of mind requirement akin to that which accompanies application of the other terms in the same statutory phrase. We describe that state of mind as one involving knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior." *Id.* at 269, 1757. The *Bullock* Court explained as follows:

> [W]here the conduct at issue does not involve bad faith, moral turpitude, or other immoral conduct, the term requires an intentional wrong. We include as intentional not only conduct that the fiduciary knows is improper but also reckless conduct of the kind that the criminal law often treats as the equivalent. Thus, we include reckless conduct of the kind set forth in the Model Penal Code. Where actual knowledge of wrongdoing is lacking, we consider conduct as equivalent if the fiduciary "consciously disregards" (or is willfully blind to) "a substantial and unjustifiable risk" that his conduct will turn out to violate a fiduciary duty. ALI, Model Penal Code § 2.02(2)(c), p. 226 (1985). See *id.,* § 2.02 Comment 9, at 248 (explaining that the Model Penal Code's definition of "knowledge" was designed to include " 'wilful blindness' "). That risk "must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves *a gross deviation* from the standard of conduct that a law-abiding person would observe in the actor's situation." *Id.,* § 2.02(2)(c), at 226 (emphasis added). Cf. *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 194, n. 12, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976) (defining scienter for securities law purposes as "a mental state embracing intent to deceive, manipulate, or defraud").

*Bullock,* 569 U.S. at 273-74, 133 S.Ct. at 1759-1760.

Plaintiffs have not met their burden of demonstrating that the doctrine of collateral estoppel entitles them to judgment as a matter of law in this Adversary Proceeding. The summary judgment record fails to establish that a finding of scienter or intent to injure was actually litigated and determined in the State Court Action to conclusively establish defalcation under § 523(a)(4) here. The State Court Decision lacks findings or reference to specific allegations that the breaches of fiduciary duty were fraudulent, intended to deceive, defraud, misappropriate property, or otherwise cause harm or injury. The State Court Decision refers to Debtor's choice to ignore the terms of the Trust and states that Debtor "believed there was only a valid trust if it came time for Ann to apply for Medicaid; however, she had a fiduciary obligation to administer the

trust according to its terms, whether or not Ann applied for Medicaid."[30]

Debtor submitted an affidavit in support of her opposition to summary judgment in which she states, "It was my understanding that I could use the funds from the [T]rust to pay the expenses of the real estate and for my mother."[31] Debtor further avers that it was her understanding that if her mother was disabled, Debtor could "use the [T]rust to pay for her health, maintenance, and support. I did not think I had done anything wrong in using the funds from the [T]rust to support my mother."[32] Plaintiffs object to the inclusion of Debtor's affidavit in the summary judgment record on the basis that it includes facts that were litigated in the matter resulting in the State Court Decision.[33] Plaintiffs provide no evidence in support of their position.

Plaintiffs point to strong language within the State Court Decision and the apparent weight that the State Court assigned to Debtor being a licensed attorney to infer that the State Court actually determined a defalcation occurred. That language alone without a sufficiently detailed record does not support that the State Court ruled upon the ultimate issue of Debtor's mental state or intent to injure and is not sufficient to establish entitlement to judgment as a matter of law.

Based upon the summary judgment record, this Court cannot adequately determine that the identical issue of defalcation (with the requisite culpability) was necessarily decided in the State Court Action. Accordingly, when viewing the evidence in the light most favorable to Debtor, as the non-movant, genuine issues of material fact remain. *See In re Snyder,* 939 F.3d at 103-05. Because the two prongs of collateral estoppel are conjunctive, and because the Court has determined that Plaintiffs have failed to satisfy the first prong, summary judgment is denied.

## FACTS ESTABLISHED FOR TRIAL

Debtor's pleadings and supporting documentation filed in response to the Motion for Summary Judgment, including the Objection to the Motion for Summary Judgment (doc. # 6), establish that Debtor was acting in an express fiduciary capacity with respect to the Trust and the assets of the Trust when the debt was incurred and the State Court Decision sets the amount of the debt. Debtor disagrees that the facts establish as a matter of law that she acted with the requisite culpability to establish an exception to discharge.

Under Federal Rule of Civil Procedure 56(g), applicable hereto by Fed. R. Bankr. P. 7056, it is

---

[30] *See* State Court Decision at p. 9. The State Court Decision catalogs the issues before the Court. *See id.* at pp. 2-4. Each issue is premised by "Has the Trustee breached her fiduciary duty…" *Id.* No issue identified in the State Court Action refers to Debtor's state of mind or intent to injure. *Id.*
[31] *See* Objection to Motion for Summary Judgment (AP doc. #6), Exhibit 1, Affidavit at ¶ 34.
[32] *See id.* at ¶ 36.
[33] *See* Reply Memorandum in Response to Defendant's Objection to Motion for Summary Judgment (AP doc. #7).

established for trial purposes that the Debtor was acting in an express fiduciary capacity with respect to the Trust and the assets of the Trust when the debt was incurred and Debtor is indebted to Plaintiffs in the amount of $153,391.72, plus prejudgment interest at the statutory rate from June 8, 2017, until the Petition Date. Those issues will not be litigated at trial. As to all other facts related to Plaintiffs' claim, Plaintiffs continue to bear their burden of proof at trial.

## CONCLUSION

For the reasons set forth, the Court holds that collateral estoppel cannot be invoked by Plaintiffs as a matter of law to establish that there is no material issue of fact on their claim under § 523(a)(4). Because Plaintiffs offer no other theory or sufficient undisputed facts on which the summary judgment record would establish that there is no genuine issue of material fact, the Court denies Plaintiffs' Motion for Summary Judgment. This memorandum of decision constitutes the Court's findings of fact and conclusions of law.

The Court will set a pretrial conference at which a trial date will be set.

August 11, 2023  
Burlington, Vermont

*Heather Z Cooper*  
Hon. Heather Z. Cooper  
United States Bankruptcy Judge