Formatted for Electronic Distribution Not for Publication

UNITED STATES BANKRUPTCY COURT
DISTRICT OF VERMONT

Filed & Entered
On Docket
04/23/2024

|  |  |
|---|---|
| In re: ) ) JEAN M. PAGLIUGHI, ) ) Debtor. ) ) MATTHEW BROWN ET. AL., ) ) Plaintiffs, ) ) v. ) ) JEAN M. PAGLIUGHI, ) ) Defendant. ) | Case No. 22-10172 Chapter 13   Adversary Proceeding Case No. 23-01004 |

*Appearances:*

*Antonin I. Z. Robbason, Esq.* *Rebecca A. Rice, Esq.*
*Ryan, Smith & Carbine, Ltd.* *Cohen & Rice, P.C.*
*Rutland, Vermont* *Rutland, Vermont*
*For the Plaintiffs* *For the Defendant*

**MEMORANDUM OF DECISION**
**D<small>ETERMINING</small> C<small>LAIM TO BE</small> N<small>ON</small>-D<small>ISCHARGEABLE</small> U<small>NDER</small> § 523(a)(4)**

Plaintiffs Matthew and Jacqueline Brown ("Plaintiffs") initiated this adversary proceeding against Debtor Jean M. Pagliughi ("Debtor") seeking a determination of exception to discharge under § 523(a)(4)[1]. For the reasons set forth below, the Court finds that Plaintiffs have met their burden and excepts their claim from Debtor's discharge.

---

[1] All statutory references are to title 11 of the United States Code ("the Bankruptcy Code") unless otherwise indicated.

1

**JURISDICTION**

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Order of Reference entered by the U.S. District Court on June 22, 2012. The Court declares this contested matter to be a core proceeding according to 28 U.S.C. § 157 (b)(2)(B), over which this Court has constitutional authority to enter a final judgment.

**BACKGROUND**

A. **Procedural Background**

Debtor filed a petition for relief on December 22, 2022 ("the Petition Date").[2] On April 19, 2023, Plaintiffs filed a complaint alleging their claim was nondischargeable under § 523(a)(4).[3] On June 2, 2023, Plaintiffs filed a motion for summary judgment.[4] The Court granted the motion in part and denied it in part, finding that the claim arose while Debtor was acting in a fiduciary capacity and that the amount of the claim was $153,391.72, plus interest at the statutory rate from June 8, 2017 until the Petition Date.[5] The Court denied summary judgment on the remaining issue of whether Debtor committed a defalcation under § 523(a)(4).[6] The Court held an evidentiary hearing on this issue on February 23, 2024, at which all parties appeared and were represented by counsel.

B. **Factual Background**

On April 7, 2014, Ann Pagliughi, Debtor's mother, executed the Ann Pagliughi Irrevocable Trust (the "Trust").[7] For ease of reference, Ann Pagliughi will be referred to as "Grantor", as identified in the Trust. No disrespect is intended.

The Trust identifies Debtor as trustee and Plaintiffs as beneficiaries. In describing the trustee's duties, it says "the Trustee shall not be permitted, under any circumstances whatsoever, to make any payment of any part (or all) of the Trust principal, whether directly or indirectly, for the benefit of the Grantor."[8] The Trust allows the trustee to hire professionals, including lawyers, and to rely upon their advice.[9] It also contains a so-called "exoneration" clause which excuses

---

[2] Case No. 22-10172 Doc. # 1.
[3] Doc. # 1.
[4] Doc. # 5.
[5] Docs. ## 8 and 9.
[6] *Ibid*.
[7] Doc. # 27-3 at 1.
[8] *Id.* at 4. The Trust prevents Debtor from making direct payment of any expenses on behalf of Grantor from trust principal. Debtor testified she never invested the Trust principal, which largely derived from the sale of Grantor's home, such that there was no interest income that could have been utilized for Grantor's expenses.
[9] *Id.* at 9-10.

2

misconduct by the trustee except in the case of willful misconduct or gross negligence.[10] In all other respects, it appears typical of the kind of trust normally used to qualify its grantor for Medicaid.[11]

While Debtor was serving as trustee, she made several transfers of trust principal which violated the terms of the Trust.[12] For example, Debtor used trust principal to pay for Grantor's household expenses, including utilities and taxes, medical care, and legal expenses not directly beneficial to Grantor.[13] Debtor also transferred $50,000 from the Trust to her personal account and allowed her son to use the Trust's debit card to make everyday purchases.[14] Debtor testified that she relied upon the advice of counsel in making payments on behalf of the Grantor.

Attorney James Villani drafted the Trust and consulted from time to time with Debtor while she was acting as trustee.[15] He testified a trustee of the Trust could direct trust principal toward the Grantor without violating the terms of the Trust. For example, distributions could be made to the beneficiaries and the beneficiaries could then provide for the care of the Grantor. In this case, Plaintiffs could have taken care of their grandmother from the Trust principal. If the Plaintiffs had refused to pay for such care out of their distributions, then the Grantor could have exercised her appointment and changed the beneficiaries. The Court does not have the benefit of Plaintiffs' testimony in this regard. While Debtor consistently claimed that she acted in reliance upon the advice of counsel as trustee, neither Attorney Villani nor Debtor remember whether he counselled Debtor specifically on how to effectuate payment for Grantor's care under the Trust using Trust principal. Attorney Villani unequivocally testified Debtor's conduct violated the terms of the Trust.

After Plaintiffs requested, and Debtor filed, a trust accounting reflecting these transfers, Plaintiffs excepted to it in Suffolk County Surrogate's Court in the state of New York (the "State Court Action").[16] After a trial, the state court declined to apply the exoneration clause as a violation of public policy, finding that Debtor breached her fiduciary duties as trustee, and held her liable for damages in the amount of $153,391.72.[17]

---

[10] *Id.* at 10.
[11] *See generally id.* at 1-16. *See also* testimony of Attorney James Villani, who drafted the Trust.
[12] Doc. # 27-2 at 5-6.
[13] *Id.* at 5.
[14] *Id.* at 6.
[15] Doc. # 27-3 at 15.
[16] Doc. # 27-2 at 1.
[17] *Id.* at 10.

3

**DISCUSSION**

A. **Collateral Estoppel/Issue Preclusion Does Not Apply.**

Plaintiffs argue that based upon the court's findings in the State Court Action, Debtor cannot contest that she committed a defalcation because the state court already decided this issue.[18] Debtor asserts the State Court Action did not determine the requisite state of mind necessary to prove a defalcation occurred.[19]

Collateral estoppel prevents a party from relitigating an issue raised in a prior action and decided against that party.[20] This doctrine applies in bankruptcy and a plaintiff may use it to establish the nondischargeability of a debt.[21] Just as federal courts may give preclusive effect to each other's judgments, they may also give preclusive effect to state court judgments.[22]

Collateral estoppel is available under both federal and New York law.[23] Here, New York law applies because the other court's decision issued from a state court deciding issues of state law.[24] Under New York law, collateral estoppel bars relitigation of an issue when (1) the identical issue *necessarily was decided* in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action.[25]

Plaintiffs cannot establish the elements necessary for the application of collateral estoppel under New York law. Contrary to Plaintiffs' position, any findings related to Debtor's state of mind were not *necessarily* decided by the state court. Although Debtor argued the Trust's exoneration clause excused her conduct,[26] the state court determined New York law barred the application of exoneration clauses in *inter vivos* trusts.[27] The decision in the State Court Action upon which Plaintiffs rely need not have included any examination of Debtor's state of mind, as

---

[18] *See id.* at 7-10.
[19] *Ibid*.
[20] *Conte v. Justice*, 996 F.2d 1398, 1400 (2d Cir. 1993).
[21] *In re Snyder*, 939 F.3d 92, 100 (2d Cir. 2019).
[22] *In re Ferrandina,* 533 B.R. 11, 22 (Bankr. E.D.N.Y. 2015) (citing U.S. Const Art. IV, § 1; 28 U.S.C. § 1738).
[23] *Snyder*, 939 F.3d at 100.
[24] Doc. # 27-2 at 7-9.
[25] *See Evans v. Ottimo*, 469 F.3d 278, 281 (2d Cir. 2006) (emphasis added).
[26] Doc. # 27-2 at 8.
[27] "Petitioner's argument that language in the trust can be interpreted so as to exonerate the fiduciary from her duties of reasonable care, is unavailing. In 2018, EPTL 11-1.7, which limits, for public policy reasons, attempts to exonerate fiduciaries from liability for failure to exercise reasonable care, diligence and prudence was amended to specifically include inter vivos trustees. In addition, prior case law had established that such attempts to exonerate a fiduciary with respect to this duty had been deemed to violate public policy." *Ibid.* (internal citations omitted).

articulated by the court.[28]

Further, the analysis conducted in the State Court Action was dictated by the language of the exoneration clause itself, which attempts to exonerate the trustee from liability for failure to exercise reasonable care, diligence, and prudence. The Court finds that the mere inclusion of the words "willful misconduct" and "gross negligence" do not necessarily rise to the level of culpability that is required to establish a defalcation under *Bullock*.[29]

Thus, collateral estoppel does not apply and this Court must independently examine whether Debtor committed a defalcation within the meaning of § 523(a)(4).

**B. Debtor's Conduct Rises to the Level of Defalcation**

Defalcation requires that a debtor committed a misappropriation, rendered an inaccurate accounting, or caused a fraudulent deficiency concerning money she held as a fiduciary.[30] Additionally, "where the conduct at issue does not involve bad faith, moral turpitude, or other immoral conduct, the term requires an intentional wrong," including reckless conduct as defined in the Model Penal Code.[31] Thus, defalcation requires Debtor to have "consciously disregarded, or been willfully blind to, a *substantial* and *unjustifiable* risk that their conduct will violate a fiduciary duty [and] the risk must be of such a nature and degree that … its disregard involves a *gross deviation* from the standard of conduct that a law-abiding person would observe in the actor's situation."[32] In applying this standard, courts focus on the debtor's perceptions and "make a value judgment as to whether the defendant's conduct deserves to be sanctioned."[33]

The parties do not dispute Debtor breached her fiduciary duty; the only remaining issue is whether Debtor consciously disregarded her fiduciary duties that would constitute a gross deviation from the standard of conduct that a law-abiding person would observe in Debtor's position.[34] Based upon the record before the Court, the Court finds that Plaintiffs have met their burden in establishing Debtor committed a defalcation.[35]

---

[28] Only after making this dispositive finding did the state court evaluate whether Debtor's conduct would be covered by the exoneration clause if the clause could apply.
[29] *Bullock v. BankChampaign, N.A.*, 569 U.S. 267, 272, 133 S. Ct. 1758, 1757 (2013).
[30] *Bullock*, 569 U.S. at 272, 133 S. Ct. at 1758.
[31] *See id.* at 273.
[32] *Id.* at 274 (citing Model Penal Code § 2.02(2)(c), p. 226 (1985) (emphasis added)).
[33] *In re Cupit*, 514 B.R. 42, 54 (Bankr. D. Colo. 2014).
[34] *Bullock*, 569 U.S. at 273; Doc. # 8 at 8-9.
[35] *See* Fed.R.Bankr.P. 4005.

5

Debtor consciously disregarded her fiduciary obligations as Trustee. She repeatedly and consciously spent the Trust's principal on expenses unauthorized by the plain language of the Trust such as upkeep and maintenance on her mother's home, legal bills, and for her mother's medical care.[36] She reimbursed herself for mortgage payments, utilities, taxes, and Grantor's medical care from the Trust principal. It is not lost on the Court that Grantor was Debtor's mother and that Debtor felt compelled to take care of her mother and her mother's expenses. Nonetheless, her justification of the expenses without referring to the Trust document itself, demonstrates a willful blindness to her duties as trustee. Debtor testified repeatedly that she did not read the Trust or understand it.[37] Yet, Debtor testified in the State Court Action that she understood the Trust could not pay for the health care of Grantor but she did so anyway.[38] Debtor testified she was simply out of money and thus, she utilized the Trust.

Debtor claims she relied on her attorneys for legal advice about her duties as trustee. However, Debtor produced no evidence as to what legal advice she actually received or when. While Debtor may or may not have known at the time of her conduct that it violated the Trust, there is no evidence in the record that Debtor clarified or sought to clarify her understanding of her duties before she acted. There were many transactions. Debtor admits that she could have at any time gone back and looked at the Trust. She consciously and recklessly chose not to.

As an added wrinkle to the facts in this case, Debtor is a licensed attorney and has been practicing law in some capacity since 1988. Even though Debtor may not have a specialty in estate planning or trusts, she has a greater appreciation for the concept of a fiduciary relationship over that of a law-abiding person who lacks legal education and training.

As a licensed attorney, Debtor is familiar with the concept of a trust account and would never use client trust accounts for personal purposes. Debtor testified she did not regard the Trust bank account as a trust account, despite the Trust bank account being labeled as such.[39] The evidence establishes that Debtor treated the Trust bank account as a checking account. Her son accessed the Trust bank account for various personal expenses because Debtor did not safeguard the debit card attached to the Trust bank account.[40] Debtor withdrew $50,000 from the Trust bank

---

[36] Doc. # 27-3 at 5.
[37] Debtor testified, "I really didn't understand it because I really didn't read it."
[38] *See* Doc. # 27-5 at 48.
[39] *See* Doc. # 27-11.
[40] Doc. # 27-3 at 6. It is not entirely clear from the record why a debit card was attached to the Trust bank account.

account while the State Court Action was pending and placed it into an account in her name personally, which was then accessed and used by her daughter to care for a sick pet. Debtor's attempted distinction without a difference between her professional client trust accounts and the Trust bank account are simply not credible. In the end, the Debtor knew better and chose not to be conversant in the Trust terms or follow the Trust directives.[41]

The Court finds that Debtor's conduct involved a gross deviation from the standard of conduct which a law-abiding person would observe in her situation and that she committed a defalcation within the meaning of § 523(a)(4).[42]

## CONCLUSION

Having previously found that Debtor was acting in an express fiduciary capacity with respect to the Trust and the assets of the Trust when the debt was incurred and the State Court Decision sets the amount of the debt, for the reasons set forth herein, the Court finds that Plaintiffs have established the acts were committed with such culpability as to constitute defalcation.

Accordingly, the Court holds Plaintiffs have met their burden under § 523(a)(4) and their claim is excepted from Debtor's discharge. This memorandum of decision constitutes the Court's findings of fact and conclusions of law. A separate order will issue.

April 23, 2024  
Burlington, Vermont

Heather Z. Cooper  
United States Bankruptcy Judge

---

[41] *See, e.g., id.* at 7-10.
[42] *See Bullock,* 569 U.S. at 274.